WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

ESTÉE LAUDER COSMETICS LTD., et al., )
             )
       Plaintiffs, )
             )
    vs.      )
             )
GET YOUR MAC ON, LLC, et al.,  )
             )  No. 2:13-cv-0634-HRH
       Defendants. )
_____)

### O R D E R

Motion for Summary Judgment;
Motion for Summary Disposition

Plaintiffs move for summary judgment.[1]  The corporate defendant is currently unrepresented[2] and thus did not file an opposition to plaintiffs' motion for summary judgment.  Defendant Vitale filed a two-sentence response in which she asserted that there

---

[1]Docket No. 49.

[2]Defense counsel's motion to withdraw was granted on June 27, 2014.  Docket No. 46. Defendants were given 30 days in which to find substitute counsel.  Upon expiration of the 30-day stay, no substitute counsel had filed an appearance, and the court entered a case status order in which it stated that it assumed that Vitale would proceed pro se and reminding her that she could not represent the corporate defendant.  Docket No. 47.

were material questions of fact at issue.[3]  On November 10, 2014, the court advised Vitale that

her response was insufficient and gave her notice of her obligations under Rule 56, Federal

Rules of Civil Procedure.[4]  The court gave Vitale until December 12, 2014 to file another

response to plaintiffs' motion for summary judgment.[5]  Vitale did not file an additional

response nor did she move for an extension of time in which to do so.  On December 22, 2014,

plaintiffs filed a motion for summary disposition[6] of their motion for summary judgment.

The motion for summary disposition is unopposed.  Oral argument has been requested on

the motion for summary judgment but is not deemed necessary.

<u>Facts</u>

Plaintiffs are Estée Lauder Cosmetics Ltd. and Make-up Art Cosmetics Inc. (M·A·C).

Defendants are Get Your Mac On, LLC and Yvonne Vitale.[7]

M·A·C is a wholly owned subsidiary and trademark licensee of Estée Lauder.[8]  Estée

Lauder "owns all rights and interest in certain trademarks and/or trade names associated

---

[3]Docket No. 55.

[4]Docket No. 56.

[5]<u>Id.</u> at 2.

[6]Docket No. 57.

[7]Plaintiffs settled with the other defendant in this case, Daniel Hiralez, and plaintiffs'
claims against him have been dismissed without prejudice.  Docket Nos. 48 & 54.

[8]Affidavit of Jessica Heiss [etc.] at 2, ¶ 4, Exhibit A, Plaintiffs' Motion for Summary
Judgment [etc.], Docket No. 49.

with the M·A·C brand of cosmetic products (the 'M·A·C Marks')."[9]  "Plaintiffs or their affiliated companies own or have the exclusive right to use the formulations, trade dress, and look and feel of cosmetic products sold under the M·A·C Marks."[10]  "Plaintiffs spend millions of dollars annually advertising and promoting M·A·C products."[11]  "Genuine M·A·C products are sold at M·A·C authorized retail stores ... and online via M·A·C's internet web store ... as well as other authorized online stores."[12]

Sometime in 2009, defendants began selling products alleged to be genuine M·A·C products on their website, www.getyourmacon.com.[13]  Defendants' website contained assertions that "[a]ll of our products are 100% AUTHENTIC M·A·C, no fakes here!" and that the products being sold were not replicas but genuine "overstock" products.[14]  It is undisputed that defendants were not licensed or authorized by plaintiffs to advertise, distribute, sell, or offer to sell genuine M·A·C products.

"In 2012, [p]laintiffs learned that Target Australia Pty Ltd ('Target Australia') ... was

---

[9]Id. at ¶ 3.

[10]Id. at ¶ 5.

[11]Id. at 3, ¶ 18.

[12]Id. at ¶ 16.

[13]Deposition of Yvonne Vitale at 15:9-10 & 26:11-12, Exhibit B, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 49.

[14]Exhibit C, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 49.

offering and selling products it purported were M·A·C products."[15]  "Target Australia was not an authorized M·A·C retailer and [p]laintiffs had not given Target Australia any authority to sell M·A·C products."[16]  Plaintiffs sued Target Australia and its suppliers, Laconi Australia Ltd. and Premium Designer Brands Pty. Ltd.[17]  During discovery in that case, plaintiffs learned that Laconi had received its supply of purported M·A·C products from defendants.[18] Plaintiffs purchased some of the purported M·A·C products from Target Australia stores and subjected the products to chemical testing.[19]  The testing revealed that the Target products, which had been sold by defendants, were substantially different from plaintiffs' genuine products.

On March 28, 2013, plaintiffs commenced this action.  In Count I of their complaint, plaintiffs assert a trademark counterfeiting and infringement claim.  In Count II, plaintiffs assert an unfair competition - trade dress infringement claim.  In Count III, plaintiffs assert a federal false designation of origin claim.  In Count IV, plaintiffs assert that defendants have violated A.R.S. § 44-1453(A), which prohibits the use of counterfeit marks, and which

_____

[15]Heiss Affidavit at 4, ¶ 22, Exhibit A, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 49.

[16]Id. at ¶ 23.

[17]Id. at ¶ 24.

[18]Id. at ¶ 26.

[19]Affidavit of Maryann McKeever Alfieri at 3, ¶¶ 10, 12; 4, ¶ 15, Exhibit F, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 49.

plaintiffs allege entitles them to treble damages.  In Count V, plaintiffs assert a state-law trademark dilution claim.   In Count VI, plaintiffs assert a common-law trademark infringement claim.  In Count VII, plaintiffs assert a common-law unfair competition claim. In Count VIII, plaintiffs assert an unjust enrichment claim.  In Count IX, plaintiffs assert an intentional interference with business expectations claim.  And, in Count X, plaintiffs assert a cybersquatting claim.  Plaintiffs seek injunctive relief and damages.

Plaintiffs now move for summary judgment on all of their claims against defendants. Plaintiffs also move for summary disposition of their motion for summary judgment because neither defendant has filed a response to the motion for summary judgment.

<u>Discussion</u>

Plaintiffs' motion for summary disposition is denied.  "Although permitted under Local Rule 7.2(i), the Ninth Circuit Court of Appeals ... has held that Federal Rule of Civil Procedure 56 forbids such a practice with respect to motions for summary judgment." <u>McLemore v. Johnson</u>, Case No. CV–12–02288–PHX–JAT, 2014 WL 2048073, at *2 (D. Ariz. May 19, 2014) (citing <u>Heinemann v. Satterberg</u>, 731 F.3d 914, 917 (9th Cir. 2013)).  The court will consider plaintiffs' summary judgment motion on its merits.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to show that there is an absence of genuine issues of

material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. <u>Id.</u> at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." <u>T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

To prevail on their federal trademark counterfeiting, trademark infringement, trade dress infringement, and false origin claims, plaintiffs "must demonstrate (1) that [they have] a valid mark that is entitled to protection under the [Lanham] Act and (2) that [d]efendants' actions are likely to cause confusion as to the origin of the mark." <u>Gucci Amer., Inc. v. Duty Free Apparel, Ltd.</u>, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). It is undisputed that plaintiffs have valid marks that are entitled to protection. It is also undisputed that defendants' actions are likely to cause confusion because it is undisputed that defendants were selling counterfeit products and "counterfeits, by their very nature, cause confusion." <u>Id.</u> Plaintiffs are thus entitled to summary judgment on Counts I, II, and III of their complaint.

To prevail on their claim in Count IV that defendants violated A.R.S. 44-1453(A), plaintiffs must show that defendants "knowingly and with intent to sell or distribute use[d], display[ed], advertise[d], distribute[d], offer[ed] for sale, s[old] or possesse[d] any item that bears a counterfeit mark...." It is undisputed that defendants sold items that bore a counterfeit mark. A defendant acts "knowingly" if there is a "high probability" that the goods she is selling or offering for sale bear a counterfeit mark or if she "acted with a conscious purpose to avoid learning the true"nature of the product. State v. Diaz, 803 P.2d 435, 438 (Ariz. Ct. App. 1990), vacated in part on other grounds, 813 P.2d 728 (Ariz. 1991). Defendant Vitale testified that she compared the product she purchased from suppliers to M·A·C product that she had purchased from an authorized M·A·C retailer and that in her opinion, the product she purchased was authentic, even though she had no training regarding counterfeit goods, did not undertake any laboratory testing, and had no agreements with her suppliers that the product she was purchasing was not counterfeit.[20] This evidence is sufficient to show that defendants turned a blind eye to the counterfeit nature of the goods that they were selling and offering for sale. Because defendants knowingly offered for sale and sold counterfeit goods, plaintiffs are entitled to summary judgment on Count IV.

Plaintiffs are also entitled to summary judgment on Count V, which is their state-law

---

[20]Vitale Deposition at 18:7-9; 24:10-12; 34:5-8; & 90:6-9; Exhibit B, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 49.

trademark dilution claim.  It is undisputed that the M·A·C marks are famous in Arizona and that the sale of counterfeit products dilutes the M·A·C marks and causes injury to plaintiffs' business reputation.

Plaintiffs are also entitled to summary judgment on their common-law trademark infringement claim in Count VI for the same reason they are entitled to summary judgment on their federal trademark infringement claim.

In Count VII, plaintiffs assert a common-law unfair competition claim.  Arizona's common-law doctrine of unfair competition "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation." Fairway Constructors, Inc. v Ahern, 970 P.2d 954, 956 (Ariz. Ct. App. 1998).  "[T]he central tort in unfair competition at common law is known as palming off, or passing off.  It consists in a false representation tending to induce buyers to believe that the defendant's product is that of the plaintiff...." Id. (citation omitted).  It is undisputed that defendants induced their buyers into believing that they were purchasing authentic M·A·C products.  In other words, there is no dispute that defendants were deceiving the buying public and thus plaintiffs are entitled to summary judgment on Count VII.

In Count VIII, plaintiffs assert an unjust enrichment claim.  In this case, the court will treat this "claim" as a theory of recovery, rather than as an independent claim.  See Safeworks, LLC v. Teupen Amer., LLC, 717 F. Supp. 2d 1181, 1194 (W.D. Wash. 2010) (citing

Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993)).

In Count IX, plaintiffs assert an intentional interference with business expectancies claim.

> To establish a prima facie case of intentional interference, a plaintiff must show the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.

Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors, 909 P.2d 486, 494 (Ariz. Ct. App. 1995). It is undisputed that plaintiffs expected to sell genuine M·A·C products to retailers and consumers, that defendants knew plaintiffs had such expectations, that defendants' sale of counterfeit goods diverted customers who would have otherwise bought genuine M·A·C products from plaintiffs or their authorized retailers, and that plaintiffs were damaged as a result. Plaintiffs are entitled to summary judgment on this claim.

In Count X, plaintiffs assert a cybersquatting claim. "'Cybersquatting occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672, 680 (9th Cir. 2005) (quoting DaimlerChrysler v. The Net Inc., 388 F.3d 201, 204 (6th Cir. 2004)).

It is undisputed that defendants registered the domain name, www.getyourmacon.com, and then attempted to profit from that registration by advertising and offering for sale counterfeit M·A·C products. Thus, plaintiffs are entitled to summary judgment on their cybersquatting claim.

Because plaintiffs are entitled to summary judgment on all of their claims against defendants, the court must consider what remedies are appropriate. First, plaintiffs seek a disgorgement of defendants' profits. A party that establishes trademark infringement can recover the "defendant's profits[.]" 15 U.S.C. § 1117(a); see also, A.R.S. § 44-1451(B)(2)(a) ("the court ... [m]ay also require the defendant to pay to the plaintiff, subject to the principles of equity ... [t]he defendant's profits"). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Plaintiffs have presented proof that defendants' total revenue from the sale of the counterfeit products was $620,868.08.[21] Defendants have presented no evidence that they are entitled to any deductions. Thus, plaintiffs are entitled to $620,868.08 in damages.

Absent extenuating circumstances, 15 U.S.C. § 1117(b) requires the court to treble the damages assessed under subsection (a) if the defendant "intentionally us[es] a mark or designation, knowing such mark or designation is a counterfeit mark ... in connection with

---

[21]Exhibit H, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 49.

the sale, offering for sale, or distribution of goods or services[.]" Because this case involves counterfeiting and because plaintiffs have shown that defendants turned a blind eye to the counterfeit nature of the products that defendants were offering for sale, plaintiffs are entitled to treble damages in the amount of $1,862,604.24.

Plaintiffs are also entitled to their reasonable attorney fees. Section 1117(b) provides that when a defendant "intentionally us[es] a mark or designation, knowing that such mark or designation is a counterfeit mark" the court "shall" award reasonable attorney's fees. 15 U.S.C. § 1117(b).

Finally, plaintiffs have requested the entry of a permanent injunction. "Trademark law gives federal courts the 'power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable....'" La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762 F.3d 867, 879 (9th Cir. 2014) (quoting 15 U.S.C. § 1116).

> Following those principles, a permanent injunction may be entered where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

Id. (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).

The uncontroverted evidence shows that defendants' use of the M·A·C marks irreparably harmed plaintiffs because that use created consumer confusion, led to expensive

litigation in Australia, and damaged plaintiffs' business reputation.  Plaintiffs have no adequate remedy at law because there is evidence that defendants are continuing to infringe the M·A·C marks.[22]  See Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement").  An injunction would be of great service to the general public, in large part to keep defendants from selling counterfeit goods in the future.  Thus, equity favors the entry of an injunction.

Conclusion

Plaintiffs' motion for summary disposition[23] is denied.  Plaintiffs' motion for summary judgment[24] is granted.

The clerk of court shall enter judgment in favor of plaintiffs and against defendants Get Your Mac On, LLC and Yvonne Vitale in the amount of $1,862,604.24 and permanently enjoining defendants Get Your Mac On, LLC and Yvonne Vitale, their officers, employees, shareholders, owners, agents, representatives and all those acting in concert or participating

---

[22]Affidavit of Daniel Hiralez at 5, ¶¶ 37 & 39, Exhibit I, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 49 ("I believe that [Ms. Vitale] continued to sell the MAC product up and through June of 2013" and "I believe Ms. Vitale and her husband, Omar Moreno, are still selling MAC make-up under her new company, Authentic Cosmetics Direct").

[23]Docket No. 57.

[24]Docket No. 49.

-12-

with Get Your Mac On, LLC and Yvonne Vitale from:

1)      manufacturing, advertising, marketing, promoting, offering to sell, selling, importing, exporting, storing, maintaining, or distributing in any way any counterfeit M·A·C goods or products;

2)      infringing, counterfeiting, or diluting the M·A·C Marks, M·A·C products and the Trade Dress used by plaintiffs to package, promote, sell or distribute genuine M·A·C products;

3)      using or employing any M·A·C intellectual property that may be calculated to falsely advertise any products of defendants as being manufactured, approved, authorized and/or sponsored by or in any way associated with plaintiffs;

4)      falsely conveying that defendants or any of their products are associated with or sponsored by plaintiffs;

5)      utilizing any websites or other internet advertising that incorporate any of the M·A·C Marks; and

6)      from further infringing on any of the M·A·C intellectual property.

Plaintiffs may also submit a motion for attorney's fees in accordance with Local Rule 54.2.

DATED at Anchorage, Alaska, this 22nd day of January, 2015.

/s/ H. Russel Holland
United States District Judge

-13-